# Commonwealth *versus* Pittsburg, Fort Wayne and Chicago Railway Co.

1. A profit upon the capital or investment of a corporation, either made or passed to the stockholders without declaration of a dividend, or a dividend declared, becomes the measure of the state tax on dividends.

2. If a dividend be declared, the stock is taxable on the basis of the declaration; and the company is estopped by the declaration whether the dividend be earned or not.

3. A nominal or arithmetical increase of shares without transferring to

[Commonwealth v. Pittsburg, Ft. W. & Chicago Railway Co.]

the stockholders anything out of the treasury or property of the corporation, is not a dividend or profit, either made or declared.

4. A railroad company leased its road to another corporation for nine hundred and ninety-nine years, at 12 per cent. per annum on its capital; the first company increased the number of its shares 71 per cent. (the par value of both the original and increased shares being $50), on which the stockholders were to receive 7 per cent. dividend, being the same amount they would have received on the original number of shares at 12 per cent. *Held*, that this increase was not subject to state taxation as a dividend or profits.

5. Acts of 29th April 1844 and May 1st 1868, as to taxation of corporation stock, construed.

6. Atlantic and Ohio Telegraph Co. v. Commonwealth, 16 P. F. Smith 57; Citizens' Passenger Railway Co. v. Philadelphia, 13 Wright 251; Commonwealth v. Cleveland, Painesville and Ashtabula Railroad, 5 Casey 370; Lehigh Crane Iron Co. v. Commonwealth, 5 P. F. Smith 448, remarked on.

May 19th 1873.   Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Dauphin county :* Of May Term 1873, No. 32.

This proceeding was by appeal filed December 28th 1870, by The Pittsburg, Fort Wayne and Chicago Railroad Company from the settlement made against them October 26th 1870 by the accounting officers of the Commonwealth.

The settlement was for tax on capital stock and dividends claimed by the Commonwealth to be due from the company up to July 12th 1870.   The amount found by the settlement to be due to the Commonwealth was $48,546.14.

On the 23d of March 1870, J. P. Farley, the auditor of the company, furnished to the auditor-general, under date of March 23d 1870, " The following statement, showing the date, amount and rate per cent. of each dividend declared, and the amount of capital paid in at the time the respective dividends were made, during the year ending December 31st 1869 :—

| Date. | Time. | Capital paid in. | Rate. | Amount of Div. |
|---|---|---|---|---|
| 1869.<br>Jan. 1.<br>April 1.<br>July 1.<br>Oct. 1. | For quarter ending Dec. 31st 1868<br>For quarter ending March 1st 1869<br>For quarter ending June 30th 1869<br>For quarter ending September 30th<br>1869, guarantied stock<br>For quarter ending—yet to be converted to guaranteed stock<br>United States tax on the same | $11,497,500.00<br>11,497,600.00<br>11,497,700.00<br><br>19,665,000.00<br><br>155,000.00 | $2\frac{1}{2}$<br>$2\frac{1}{2}$<br>$2\frac{1}{2}$<br><br>$1\frac{3}{4}$<br><br>3 | $287,437.50<br>287,440.00<br>287,442.50<br><br>344,137.50<br><br>4,650.00<br>63,543.14 |
| | | | | $1,274,650.64" |

In the settlement the accounting officers of the Commonwealth treated the difference between $11,497,500, the original capital stock and $19,665,000, " the guarantied stock " as a dividend of

[Commonwealth v. Pittsburg, Ft. W. & Chicago Railway Co.]

profits of 71 per cent. on the original stock and taxed the company accordingly; the correctness of this the company denied.

The question was raised by the following circumstances:

On the 7th of June 1869, the company leased their road to the Pennsylvania Railroad Company for 999 years at a clear annual rent of 12 per cent. per annum upon the capital, which was then $11,497,500. On the 7th of June, the Pittsburg, Fort Wayne and Chicago Railroad Company determined to issue 171 shares for each 100 shares of the stock then held by the stockholders, and to pay on the new stock a 7 per cent. dividend instead of 12 per cent. upon the original capital. The *amount* which each stockholder would receive on his increased *number* of shares after the conversion would be the same as that received by him before; the profits to be divided before and after the conversion, were the same, viz.: $1,380,000, being the rent at the rate of 12 per cent. on the capital stock, paid by the Pennsylvania Railroad Company.

The case was tried November 26th 1872, before Pearson, P. J.

The Commonwealth gave in evidence the return made by the company as given above and the settlement.

Also the following letter:

"Pittsburg, Fort Wayne and Chicago Railway,　　　⎫
　　(Pennsylvania Railroad Co., lessee,)　　　　　⎬
　　Office of the auditor, Pittsburg, March 30th 1870.⎭

Hon. J. F. HARTRANFT, Auditor-General,

Harrisburg, Pa.:

DEAR SIR:—Yours of the 24th inst. received, in reference to report of dividend on capital stock for the year 1869.

In answer to your question as to increase of capital since June 30th 1869, I enclose you a copy of circular to stockholders and lease to the Pennsylvania Railroad Company, in which, by referring to pages 11 and 12, you will find a full and satisfactory explanation of the increase of capital. Also enclosed you will find circular referred to in my letter of the 23d inst.

Yours, truly,

J. P. FARLEY, Auditor."

The Commonwealth then gave in evidence the circular to the stockholders, as to the lease to the Pennsylvania Railroad Company, viz.:—

"Pittsburg, Fort Wayne and Chicago Railway Company,　⎫
　　Office of the Secretary, Pittsburg, June 30th 1870.⎭

At the adjourned annual meeting of the stockholders of this company, held in the city of Pittsburg, Penna., on the 24th day of June, A. D. 1869, the following resolution was adopted, viz.:—

*Resolved*, That inasmuch as in and by the provisions of the lease of the railway of this company to the Pennsylvania Railroad

Company, after satisfying the liabilities of the company for interest and sinking funds, a perpetual dividend fund is provided, adequate to pay twelve per cent. upon the existing stock of this company, free and clear of all taxes, which may operate as a deduction from said dividends, it is expedient that a guarantied stock entitled to dividends at the rate of seven per cent. per annum, payable quarterly in such form and with such guaranties as the board of directors may prescribe, and of such aggregate amount as the annual rental of one million three hundred and eighty thousand dollars shall suffice to pay dividends upon, at the aforesaid rate of seven per cent. per annum, shall be created, and the same shall be in substitution of the now existing stock, in such manner and on such terms as the board of directors may provide; and that the board of directors, and such committee or officers as they may designate, are hereby vested with all powers which the stock-holders can confer, and which may be necessary or proper to carry this substitution into complete effect."

Then followed a resolution constituting an executive committee, with the powers of the board of directors.

"Pittsburg, Fort Wayne and Chicago Railway Co., ⎫
Office of the Secretary, Pittsburg, June 30th 1870. ⎬

'In pursuance of the foregoing, the executive committee ordered that there should be issued to the stockholders new certificates, to be called 'guarantied dividend stock,' in exchange for the old certificates, at the rate of one hundred and seventy-one shares of new stock for each one hundred shares of old.

"The president was directed to prepare new certificates of stock in accordance with this plan, and cause the same to be issued to' the shareholders on their surrender of the old certificates.

"The stockholders have surrendered, with the exception of a small amount, all the old certificates and taken new in exchange."

The Commonwealth offered in evidence a pamphlet signed "Samuel J. Tilden, trustee," which was the circular referred to in Mr. Farley's letter of March 30th 1870, being "A Circular to the Stockholders and Bondholders of the Pittsburg, Fort Wayne and Chicago Railway Company."

The parts to which Mr. Farley refers the auditor-general, on pp. 11 and 12, were read; the remainder was rejected and a bill of exceptions sealed for the Commonwealth; Judge Pearson saying:—

"The parts read are proper as referred to by an accredited officer of the company in answer to the letter of the auditor-general. That does not make the residue, signed by Mr. Tilden as trustee, without proof that he was such, and in that capacity authorized to make admissions. The reference to certain pages as containing facts will not amount to admissions by the officer that

[Commonwèalth *v.* Pittsburg, Ft. W. & Chicago Railway Co.]

all contained in the pamphlet is correct, but merely that such is the case with the pages referred to." Pamphlet rejected.

The paragraphs of circular read to the jury were :—

" The stockholders become entitled to the benefit of a fund adequate to give them twelve per cent. on the present amount of stock, free and clear of all taxes, whether federal or state, which are collected in any manner through the corporation, and are guarantied perpetually in the enjoyment of that fund.

" In this connection, it is proper to advert to the proposal to convert the present stock, which would be entitled to dividends of twelve per cent., free of deductions for taxes, into a new stock, which would be entitled to dividends of seven per cent., quarterly, free of such deductions.

" That measure is, in this instance, totally clear from every question of personal interest or public policy, except whether it will be advantageous to the stockholders. The annual sum, receivable in quarterly instalments, is the same in either case ; and the security to which that annual sum furnishes the income, is perpetual.

" The proposed new capitalization has no element in common with what is sometimes called the *watering* of stocks. It involves none of the expectation of equal dividends on increased issues, which lends attraction, sometimes illusory, to such financial expedients. It does not capitalize temporary prosperity, favorable seasons or abundant harvests, or speculative anticipations of the future, or the sanguineness of human hopes. It capitalizes only a fixed and perpetual money income, better secured than almost any first-mortgage bond."

The paragraphs excluded were :—

" In the mean time, the policy of the company has been to strengthen itself by re-investing its surplus earnings in the improvement of its line, and enlarging its capacity, both as to the amount and the economy of its business.

    *        *        *        *        *        *        *

" But in fact the nominal par of the stock is far below the amount of actual money invested, and far below the actual cost to the proprietors.

    *        *        *        *        *        *        *

" During that four years, about three and three-quarter millions of dollars of net earnings were re-invested in improving and equipping the line, and all of it was invested economically and productively. In all, nearly seven millions of net earnings have been thus re-invested, without counting interest thereon, and without adding a dollar to the stock or bonds of the company ; and detailed statements of the nature of the investments have been annually made ; and the property which has been added remains visibly to attest the wisdom and prudence of the policy.

    *        *        *        *        *        *        *

[Commonwealth *v.* Pittsburg, Ft. W. & Chicago Railway Co.]

" The real estate of the company at Chicago, Allegheny City and Pittsburg, is represented on the books at not more than from one-third to one-half its original cost, not more than a tenth of its present value.

\*       \*       \*       \*       \*       \*       \*

" If stock had been issued for the money which has been invested, but not represented, and for dividends thereon, at the rate of seven per cent., or if stock had been issued for dividends withheld, the present amount of the stock would have been doubled. If ten per cent., instead of seven, had been adopted as the proper rate of remuneration, and stock issued accordingly, the present amount of the stock would have been much more than doubled.

\*       \*       \*       \*       \*       \*       \*

" A seven per cent. stock, on which dividends would be guarantied by net earnings of five times their annual amount, may be considered a more certain and reliable security than almost any first-mortgage bond of the best class, while it has many peculiar advantages for the investor."

In his charge to the jury, Judge Pearson, after stating the facts, said, amongst other things : \* \* \* " The rental to be paid to the company remained the same, $1,380,000 ; the amount of the money to be annually received by the stockholder the same, but he had an increased number of shares on which he was paid seven per cent. out of the same fund, instead of the twelve per cent. guarantied by the arrangement with the Pennsylvania Railroad Company. The question presented for our consideration is, is that a stock dividend ? It is an increase in the number of shares to be held by each stockholder, but they are of precisely the same value, and dividing to the holder a like sum of money. He receives no more money on his 171 shares than he was entitled under the lease to have on the 100. There cannot be any increase until after the expiration of the lease. The rent remains the same. The shares are subdivided for the convenience of the holder, not to increase their value or add to their income. We are unable to see any distinction between this case and that of 1000 shares of stock, each entitled to one hundred dollars a share, and the same stock increased to 2000 shares, each entitled to fifty dollars. \* \* \*

" We should say here as on several other occasions, that the state cannot be cut out of her taxes by any changes of stock or species of legerdemain; but it is the same to her whether she recover at the rate of one half-mill on each one per cent. of dividends made and declared, computing the same on stock dividing at 12 per cent., or on 7-12th more shares of stock declaring dividends at seven per cent. ; the amount of money and tax are identical. The net earning received by each individual is the same. The intention of the state is to tax substantial dividends, net earnings—not a shadow or myth. By whatever name the department pleases to call it, it

[Commonwealth v. Pittsbnrg, Ft. W. & Chicago Railway Co.]

is plain to be seen that there is neither a stock or cash dividend here; it is a mere sub-division of the stock at a less rate of interest. There is but one difficulty in the case, and out of that this litigation has arisen. In making his report to the Auditor-General, J. P. Farley, the auditor of this company, in his item of Sept. 30th 1869, sets it down as "guarantied stock" $19,665,000, which looks as if the stock was so increased from $11,497,500 to the holders; and if it so stood unexplained it should be conclusive against the company. The same report, however, clearly shows that it was done in the manner already indicated. We must take all of the report together; it was all given in evidence by the Commonwealth, as also that part of the pamphlet referred to in the auditor's letter read, as marked on pages 11 and 12. Taking all of the facts into consideration, as proved by the plaintiff, they establish the case as stated in our charge. * * * We are of the opinion that the whole tax so charged is illegal. The company was lawfully taxed according to the settlement attached to the appeal, which is perhaps the most full and correct, with a tax of $1\frac{1}{2}$ mills on $16,524.51, amounting to $24.78, which is not paid, and for which you will render a verdict, with interest thereon at the rate of 12 per cent. per annum, after sixty days from the date of the settlement, amounting to $31.32.

The verdict was for the Commonwealth for $31.32.

The Commonwealth took out a writ of error and assigned for error the rejection of the whole offer of evidence, and the charge of the court.

*L. D. Gilbert*, Deputy Attorney-General, and *Wayne McVeagh* (with whom was *Dimmick*, Attorney-General), for Commonwealth, plaintiff in error.—In assessing tax there is no difference between dividends actually paid to the stockholders and profits added to the stock : Commonwealth v. C. P. & A. R. R. Co., 5 Casey 373 ; Commonwealth v. Crane Iron Co., 5 P. F. Smith 448. The Commonwealth has nothing to do with the agreement of lease with the Pennsylvania Railroad Company : Commonwealth v. A. & O. Telegraph Co., 16 P. F.Smith 57.

*J. W. Simonton* and *Black*, for defendants in error.

The opinion of the court was delivered, July 2d 1873, by

Agnew, J.—The whole question in this case depends on the fact wnether the increase in the stock of this company was a stock dividend. If it was, it must be conceded that this increase is the subject of the tax of one-half mill for every one per cent. of dividend, under the fourth section of the Act of May 1st 1868 : 2 Brightly's Digest 1382, pl. 157. A stock dividend is a thing well understood, and has been passed upon by this court in several

instances.   In the Commonwealth *v.* Clevel., Paines. & Ash. R. R. Co., 5 Casey 370, it was said that "in assessing the tax, no difference can be made between the dividends actually paid to the stockholders, and stock dividends, which are profits added to the stock of each corporator."   Nor is it necessary that the corporation should formally declare the dividend payable in stock.   This was determined in the Lehigh Crane Iron Co. *v.* Commonwealth, 5 P. F. Smith 448.   There a company with a capital of $100,000, from time to time increased its capital from its earnings until its stock reached to $900,000, and we held that the increase having resulted from earnings, was liable to the half mill tax.   It was a dividend made though not so declared.   We said then that the earnings of the original capital belonged to the owners of the stock, in proportion to their shares.   So long as they remained in the profit and loss account, there was no division, express or implied, but when added to the capital and made a basis of dividends to the stockholders, they then reaped the actual benefit of the earnings of their stock.

On the question, what is the true capital of a company as the basis of dividends, a converse of the last case is that of the Citizens' Passenger Railway Co. *v.* The City of Philadelphia, 13 Wright 251.   The authorized capital of that company, on which it declared its dividend, was $500,000, but its actual capital paid in was but $192,750, and the question was whether the tax should be estimated on the authorized or on the paid-up capital.   The estimate on the nominal capital drew the dividend below six per cent., the charter limit, and hence the controversy.   This court, by Thompson, J., held that the paid-up stock, not the nominal amount, was the true basis of taxation, and on that the dividend exceeded six per cent.   The obvious reason is that the earning or profits of the stockholders on their actual investment, is the real ground on which the tax is laid.   This purpose is manifested by the letter of the act as well as its spirit.   The fourth section of the Act of May 1st 1868, is in these words:  "The capital stock of all companies whatever, incorporated, &c., shall be subject to and pay into the treasury of the Commonwealth, annually, at the rate of one-half mill for each one per cent. of dividend made or declared by such company."   A dividend is not capital, but the product of capital, and this product it is which the law by its own terms makes both the criterion and the measure of the taxation of the capital.   Thus, if a profit upon the actual capital or investment be either made or passed over to the stockholders without a declaration of dividend, or if a dividend be declared to them, the sum so made or so declared becomes the measure of the tax.   If it be made and added to the investment of the shareholders in the form of new capital, though not declared as a dividend, still it must be taken and deemed to be a dividend of the earnings of their original

[Commonwealth v. Pittsburg, Ft. W. & Chicago Railway Co.]

capital, and the new stock is called a stock dividend. This is tne point decided in the Lehigh Crane Iron Works' case, *supra*. On the other hand, if a dividend be declared and set apart to the shareholders, the stock is taxable on the basis of this declaration, of which it makes return by law to the auditor-general. The company is estopped by its declaration and report, whether the dividend be earned or not. Atlantic and Ohio Telegraph Company v. Commonwealth, 16 P. F. Smith 57. The late chief justice said, in the last case, the only question was whether the court below erred in regarding the returns as the true evidence of what dividends were declared as the basis of the auditor-general's settlement. He remarked, "She (the Commonwealth) is dealing with her own corporation, and acting solely on the evidence of its doings in regard to the subject of its liability to taxes, viz.: dividends made or declared. This is shown by its proper officer, the treasurer, in his return to the auditor-general; and the basis of that taxation is the dividends declared and paid." And again, " By whomsoever the stock is held, the measure of the tax is upon the dividends declared, and no such thing as partial dividends is ever to be presumed. When a dividend is declared (he continues) that gives the measure and furnishes the rule for the tax." This ruling derives greater force from the language of the original Act of 29th April 1844, the prototype of the Act of 1859, from which the fourth section of the Act of May 1st 1868, was taken. The Act of 1844 was that the amount of the tax chargeable on the capital stock, on which a dividend or profit of six per cent. per annum or more shall be made and declared, shall be at the rate of one-half mill on each one per cent. of such dividend or profit. This " profit " was the legislative synonym of the dividend which should measure the tax. In the case of the Phœnix Iron Co. v. Commonwealth, 9 P. F. Smith 104, the legislation on the subject of the tax on the capital stock is traced, and the difference is shown between the state tax on dividends specifically and on the capital stock as measured by the dividends. In that case the difference between the Acts of 1844 and 1859, was pointed out, which is that instead of a valuation of the stock, as per Act of 1844, when the dividend fell below six per cent., the Act of 1859 required payment of the tax at the rate of half a mill for each one per cent. of dividend made or declared, and provided for the valuation of the stock according to the Act of 1844, only when the corporation failed to make or declare any dividend. But when dividends are made or declared, they still continue to be the criterion and the measure of the tax. In this aspect, therefore, the law is still the same as under the Act of 1844, which expressly denominates the dividend as profit.

These two cases, the Lehigh Crane Iron Works and the Atlantic and Ohio Telegraph Company, have, therefore, settled the inter-

[Commonwealth *v.* Pittsburg, Ft. W. & Chicago Railway Co.]

pretation of the fourth section of the Act of May 1st 1868, according to its letter and its spirit, and they now furnish the rule for taxation. This is, that when a corporation has actually made dividends from its profits or property without formally declaring them, by adding them to the stock of the shareholders, or where it has declared dividends and returned them, whether earned or not, the sum thus added to the stock of the shareholders, or the sum thus declared and set apart to him, becomes the measure of the tax, the legislative intent being to make the profit transferred by the corporation to its shareholders from its treasury or property the measure of the taxation of its capital. Hence, it is clear that a mere nominal or arithmetical increase of the shares, without a transfer to the shareholders of anything out of the treasury or property of the corporation, is not a dividend or profit either made or declared. It is a mere change in the form of the capital or investment—a transmutation of one form into another. A dividend *ex vi termini* is a product of the stock, it is the legislative synonym of profit, not the capital which made it. But capital, no matter what new form it may take, either by the increase or diminution of the number or nominal amount of its shares, so long as no new product is added to it from the treasury or property of the corporation, is still the same capital in substance and effect. Nor does the fact that its new form gives to the stock a greater commercial value, constitute it a dividend of any profit or property of the company. It resembles a non-negotiable note converted by consent of parties into a negotiable form. No new sum passes from the debtor to the creditor, the debt is the same, but the new form has given to the instrument a new commercial value in the hands of the creditor. The mere watering of stock, therefore, which has only subdivided existing shares and has transferred nothing from the treasury or property of the corporation to the pocket of the stockholder, is not a dividend either made or declared, within the letter or spirit of the act, and furnishes no basis for additional taxation upon the corporation. It must be remembered that the question before us concerns only the corporation. If the new form of the stock makes the shareholder amenable to additional taxation for more stock, as he was under the Act of 1844, and still is to a certain extent, that is his concern, and he must pay any new burthen the increase in his stock may impose upon him. But the legislature having made the corporation amenable to taxation only according to the dividends it declares, or the product of its capital actually invested in its shareholders in the form of new stock, the state can impose under the Act of 1st May 1868, no additional burthen founded only on a mutation in the form of its capital. This being the true interpretation of the fourth section of that act, which is almost a literal transcript of the Act of 1859, the solution of the present case is free from difficulty. The resolution of the stockholders

[*Commonwealth v. Pittsburg, Ft. W. & Chicago Railway Co.*]

under which the change in the form of the stock took place, recites : That under the lease of the railway, to the Pennsylvania Railroad Company, a perpetual dividend fund is provided equal to pay twelve per cent. on the existing stock of the company, and that it is expedient that a guarantied stock entitled to dividends, at the rate of seven per cent. should be created in substitution of the now existing stock.    Authority is then conferred on the directors to carry out this purpose.    In pursuance of this authority, it was ordered that " there should be issued to the stockholders new certificates to be called 'guarantied dividend stock,' in exchange for the old certificates, at the rate of 171 shares of new stock for each 100 shares of the old."    This was but a change in the form of the stock, the new certificate representing precisely the same stock covered by the old certificate, altered only by a numerical subdivision of shares, which made 100 by the former computation to stand as 171 by the latter.    Nothing new in the shape of profit or property, so far as it appears from the evidence, passed from the company to the stockholders.    The existing shares summed up a capital of $11,497,700, on which twelve per cent. would yield a dividend of $1,379,724.    The new or guarantied stock, at the rate of increase, gives a capital of $19,665,000, on which seven per cent. gives a dividend of $1,376,550, a shade less than the old form yielded.    A further calculation shows also that the increased number of shares in the new form counterbalances the decreased per centage in the dividend, and that the Commonwealth loses nothing in her tax.

Thus standing on the report of the company, which according to the case of the Atlantic and Ohio Telegraph Company, must be taken to be true, in the absence of other evidence, no dividend or profit was made to the stockholders, and consequently the increase in the number of the shares was not a stock dividend and not a basis of taxation.

But had the rejected evidence been admitted, a new aspect might have been given to the case.    A grave question would then have arisen, whether the increase of the stock was not an increment, arising from an actual appreciation of the entire property of the corporation, which is sought to transfer to its stockholders, under color of a mere transmutation in the form of stock.    If this were the case, it cannot be doubted that the value thus transferred in the form of stock, would constitute a stock dividend, and be the measure of the tax.    The rejection of the evidence becomes, therefore, an important assignment of error.    It involves a nice discrimination, and yet we think the court was right in its ruling. The document offered was not issued by the company, but was framed and circulated by the trustee in the mortgage given to secure the bond creditors of the company.    As a document its assertions were not binding on the company without evidence of their

[Commonwealth *v.* Pittsburg, Ft. W. & Chicago Railway Co.]

previous authority or subsequent adoption.   There was no evidence of either, excepting what shall be found in the letter of Mr. Farley, the auditor of the company, to the auditor-general, in response to an inquiry of the latter.   There was no evidence of Mr. Farley's authority to represent the company in this matter, or that the duties of an auditor of the companies extend to this business.   His authority, therefore, can only be an implication, and the extent of it cannot exceed the terms of the letter itself.   Then, assuming an implication of authority to Mr. Farley, the document to which he refers, he adopted only to the extent of those parts to which he refers the auditor-general, as explanatory of the action of the railroad company.   Beyond these parts of the document, there is no evidence of adoption by the company, actual or inferential.   To infer that the statements of a trustee for a different purpose, with no evidence of his authority to make them, outside of the portions adopted by another person without evidence of his authority to adopt the entire document, are binding on the company, and would stretch the doctrine of presumptions beyond the boundaries of safety.   Such a presumption would leave the company at the mercy, whim, caprice or prejudice of a jury.   It was in the power of the Commonwealth or her officers, had they made the effort, to supply the evidence of authority, if it existed, or the evidence of the facts themselves recited in the circular.   In regard to the facts, the causes of the Commonwealth must be tried according to the same rules of evidence which apply to other suitors, she must supply the evidence of them, and if by loss or a want of evidence she fails, the misfortune or the fault is her own.   The absence of evidence cannot be supplied by presumptions at war with justice as well as with the ordinary rules of evidence.   The error of the argument which, without evidence, demands a presumption of a dividend of profits from a mere increase of capital, will be treated of in an opinion to be read in the case of the Erie and Pittsburg Railroad Company *v.* Commonwealth.   There being no evidence on the trial that there was a dividend either made or declared by the company, there was nothing to be submitted to the jury.

Judgment affirmed.