## Daily's Estate

Before Lamorelle, P. J., and Henderson, Van Dusen, Stearne, Sinkler and Klein, JJ., and Marx, P. J., twenty-third judicial district.

*Paul Maloney, Hugh J. Murtagh* and *Clifton Maloney*, for estate of life tenant.

*Michael J. Geraghty*, for remaindermen.

STEARNE, J., November 15, 1935.—The trust has terminated because of the death of the life tenant. Corporate stock is held as part of the trust res, which is being distributed in kind to the parties entitled. A contest has arisen between the estate of the life tenant and the remaindermen as to the correct apportionment of the stock. Both have excepted to the apportionment made by the auditing judge. The remaindermen claim that too many shares have been allotted to income and the estate of the life tenant maintains that it has not been awarded a sufficient number of shares.

Our examination of the record reveals that the issue presented is whether an apportionment of stock is required between income and principal, where the stock remains unsold and passes to the remainderman enhanced in value by accumulation of income earned during the pendency of the life estate. A second question is also involved: If a trustee is given the discretion either to sell stock and distribute the proceeds, or to distribute the stock in kind, and he elects to distribute in kind, does such an election operate to preclude the life tenant's estate from securing its proportionate share of the stock represented by the value of the accumulated income accrued in the lifetime of the life tenant and reflected in the value of the stock about to be distributed?

The auditing judge ruled that in either circumstance

the life tenant's estate does not participate. This we deem error.

The trust was for the benefit of a son for life, with remainders to the son's wife and their children. At the inception of the trust the trustees took over 200 shares of the common stock of an Illinois corporation, which proved to be an extraordinarily profitable investment. At the termination of the trust (almost 20 years thereafter), the trustees were shown to have exchanged, during the pendency of the trust, the 200 shares of the common stock for 1,000 shares of preferred stock and 800 shares of common stock, of the same business organization, but which stock was created by the formation of an operating corporation in another State, and by the erection of a holding corporation in Delaware, followed by the dissolution of the original Illinois corporation. The auditing judge reviews the corporate procedure. We agree with him that where in the method of reorganization 45 percent is taken from surplus and added to capital, stock taken by the trustees in exchange, to this proportion, is equivalent to a stock dividend and should be allotted to income. We disagree, however, that no apportionment may be made where earned income (both before and after the reorganization) is reflected in the value of stock, but is withheld from the estate of the life tenant solely because the stock happens to remain unsold and is being distributed in kind to the remaindermen, and when, according to the ruling of the auditing judge, the decision as to sale or retention rests exclusively in the discretion of the trustees.

It was established without contradiction that at the inception of the trust the intact value per share was $90.67, a total for the 200 shares of $18,134. At the termination of the trust the stock taken in exchange had a value as follows: 1,000 shares of preferred at $25 per share and 800 shares of common at $28.48, a total of $47,784. The gain or increase in value is therefore $29,650.

Such increase in value according to the uncontradicted testimony of the corporation's officers "was due to the

accumulated earnings of the parent company and its subsidiary companies which were not distributed as dividends to stockholders".

This situation squarely raises the questions above indicated. It is quite true that no case has been cited, nor have we been able to discover any, which authorizes an apportionment where the stock has not actually been sold and the proceeds are not before the court. We are therefore relegated to a consideration of the principles which underlie the rules respecting apportionment.

One of the most illuminating opinions upon the theory of stock apportionment between capital and income is found in the opinion of Chief Justice Pennewill of the State of Delaware, in Bryan et al. v. Aikin et al., 10 Del. Ch. 446. There are three separate theories variously applied in the several States respecting apportionment of stock between income and principal: (1) Massachusetts rule. This is solely a rule of convenience. All cash dividends go to income and all dividends of stock pass to principal. No consideration is given as to the source of the dividend; (2) American rule. All net earnings accumulated out of net profits during the life tenancy, if declared as dividends, are given to the life tenant unless the principal of the trust is impaired; (3) Pennsylvania rule. This is known as a rule of equity, and is adopted by a large majority of the States. It is really the American rule duly extended. Not only is the life tenant entitled to such dividends, whether in cash or stock, but he is otherwise entitled to receive his proportion of accumulated income even in the absence of a declaration of a dividend where the stock is sold, or otherwise dealt in, and the enhanced value of such stock is due to such accumulations.

In the instant case it is conceded that if the trustees had sold the stock and were distributing the proceeds, the Pennsylvania rule would apply. In the circumstances of this case, all of the accumulated income would have gone to income, because accumulated in the lifetime, and with the capital left intact. To again emphasize the problem,

does the fact that the stock passes in kind, and remains unsold, prevent the application of the principle?

We deem it unnecessary to review the development of our Pennsylvania rule in the Supreme Court cases commencing with Earp's Appeal, 28 Pa. 368, down to Opperman's Estate (No. 1), 319 Pa. 455. The leading case is Nirdlinger's Estate, 290 Pa. 457 (1927), where a most comprehensive opinion was written by Mr. Justice Kephart.

What Justice Kephart says in that case (page 470) has particular application to the facts of this case and rules the case:

"The testator gave the income of his estate to the life tenants. 'Income' may be defined as a gain which proceeds from labor, business or property of any kind, the profits of commerce or business. It includes the return earned by capital stock. It has a broader meaning then the term 'dividend'; it includes profits. We said in Quay's Est., 253 Pa. 80, that profits included not only the accumulations of earnings, but the advances or increment in value. It is not necessary to include the latter in the definition. What the testator did was to give to the life tenant all this income. It included all the earnings which his membership in the company or ownership in stock are responsible for, or would bring about, but not the stock's earning power. That inheres in the stock. Income of the corporation is a product of capital, part of which was furnished and owned by this estate: Com. v. Pitts., Fort Wayne and Chicago Ry. Co., 74 Pa. 83, 90. Therefore every principle of justice demands that the direction of testator be fulfilled, and that life tenants should receive this income. *There is not one single element of justice that speaks for the corpus of the estate to take the earnings. The mere fact that it is earned and retained by the company should not prevent the life tenants from ultimately receiving it unless that receipt does harm to the corpus (intact value) of the estate.*" (Italics ours.)

This to our minds is the answer to the problem sub-

mitted: it is a question of testamentary intent. Testator gave the income to his son; testator's capital was invested in the corporation; the capital earned income; the corporation happened not to have distributed this income by way of dividends, but chose to retain and withhold it; the trustees in turn, with stock so enhanced in value elected not to sell; under such circumstances, despite the form, the life tenant should not be deprived of this income, and the stock should not go to the remaindermen, so enhanced in value, contrary to testator's direction.

We are quite aware that this decision, if sustained, goes beyond any reported cases. We believe, however, it is in accord with the direction of the Supreme Court. We further recognize that this places an additional burden of care and responsibility upon a fiduciary (and in fact the court) in distributing assets upon termination of a trust. However, the Pennsylvania rule of apportionment is not one of convenience, but of equity. The Supreme Court made answer to a suggestion as to additional burdens in these matters in the Opperman case (supra) when Mr. Justice Kephart wrote:

"But, it is urged that corporate trustees should be freed from responsibility in respect to dividends of whatever nature unless the remaindermen give notice that the dividend is an unusual one or unless the dividend payment has written on its face the fact. It is urged that as these corporate trustees do an unusually large business it in effect should not be required to be careful. These trust companies as fiduciaries cannot expect the court to act as their guardian or supervising trustee to protect or advise them what should be done under circumstances such as discussed.

"Their powers as fiduciary, for which they are compensated, contemplate duties that must be performed. They must assume a fair part of the responsibilities incident thereto and not place all responsibility on the life tenants or the remaindermen. They will not be permitted to rest content in the assurance that they have employed,

to function as trust officer, some person who makes a mistake."

We have carefully considered what the Supreme Court said in Buist's Estate, 297 Pa. 537. But that was a merger of corporations and a living life tenant demanded an apportionment where no distribution had been made by the corporation, no sale made by the trustee and the corporation was actually functioning.

Under such circumstances, the life tenant was refused an apportionment. But here, the trust is at an end, and this is the only time that the life tenant's estate may secure its proportion of accumulated and withheld profits. Otherwise the remaindermen profit at the expense of the life tenant.

The original capital investment remains intact in the sum of $18,134. The present shares are valued at $47,-784. The difference or gain, amounting to $29,650, belongs to, and is awarded to income. As this gain of $29,-650 is included in the gross value of such shares, $47,784, the correct allotment to income is 29650/47784 of the entire stock. The apportionment should therefore be:

*Total stock*

| | |
|---|---|
| Preferred ................... | 1,000 |
| Common .................... | 800 |
| | 1,800 |

*Income*

| | |
|---|---|
| 29650/47784 of 1,000 shares preferred .................... | $620.50 |
| 29650/47784 of 800 shares common .................... | 496.40 |

*Principal*

| | |
|---|---|
| 18134/47784 preferred......... | $379.50 |
| 18134/47784 common ......... | 303.60 |
| | $1,800 |

and it is so awarded.

We have refrained from construing the will as to the duty of the trustees to sell or to retain. In view of our decision as above outlined this feature becomes academic. True, there may not be a conversion, but we cannot conceive, under this language, that testator intended the trustees to decide whether the life tenant should or should not receive accumulated income depending on whether the trustees decided to sell or retain. As we view the language of the will the result is the same whether the stock itself or its proceeds pass to the remaindermen. The test is not the form of the trust estate, but what is the true nature of its component parts.

The exceptions of Mary F. Guinan and Joseph A. Daily are dismissed; the exceptions of Regina B. Dailey, administratrix c. t. a. of the estate of James T. Daily, deceased, are sustained. The adjudication, as amended by this opinion, is confirmed absolutely.